**[ORAL ARGUMENT SCHEDULED FOR MAY 11, 2015]**

Nos. 10-5021, 14-5231

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

MOHAMMAD RIMI, Detainee, Guantanamo Bay Naval Station; OMAR DEGHAYES,
as Next Friend of Mohammad Rimi,

Petitioners-Appellants,

v.

BARACK OBAMA, President of the United States of America; ASHTON B. CARTER, U.S.
Secretary of Defense; RICHARD W. BUTLER, Rear Admiral, Commander, Joint Task
Force-GTMO; JOHN BOGDAN, Army Colonel, Commander, Joint Detention
Operations Group, JTF-GTMO,

Respondents-Appellees.

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————

**BRIEF FOR RESPONDENTS-APPELLEES**

———————

BENJAMIN C. MIZER
*Acting Assistant Attorney General*

RONALD C. MACHEN JR.
*United States Attorney*

MATTHEW M. COLLETTE
CATHERINE H. DORSEY
*(202) 514-3469*
*Attorneys, Appellate Staff*
*Civil Division, Room 7236*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C. 20530-0001*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.     <u>Parties and Amici</u>.

Mohammad Rimi and Omar Deghayes, as next friend of Rimi, were petitioners in the district court and are appellants in this Court. Barack Obama, President of the United States; Ashton B. Carter, Secretary of Defense; Richard W. Butler, Rear Admiral, Commander, Joint Task Force-Guantanamo; and John Bogdan, Army Colonel, Commander, Joint Detentions Group, Joint Task Force-Guantanamo, were respondents in district court and are appellees in this Court. There were no amici in the district court.

### B.     <u>Rulings Under Review</u>.

Petitioners-appellants appeal from the district court's opinion and order (Richard J. Leon, J.), entered on November 23, 2009, dismissing with prejudice Rimi's habeas action (No. 10-5021), as well as the district court's opinion and order (Richard J. Leon, J.) of July 23, 2014, dismissing Rimi's

independent action seeking reinstatement of his habeas corpus petition (No. 14-5231).  The district court's opinions and orders are not published, but are available at 2009 WL 4251097, and 2014 WL 3640794, respectively.

**C.**    **Related Cases**.

Rimi's habeas action (No. 10-5021) has previously been before this Court.  In July 2011, this Court resolved a related appeal, holding that the habeas petitions of two former Guantanamo detainees were moot.  *Gul v. Obama*, 652 F.3d 12 (D.C. Cir. 2011).  Counsel is not aware of any other related cases within the meaning of Circuit Rule 28(a)(1)(C).

  s/ Catherine H. Dorsey
CATHERINE H. DORSEY

# TABLE OF CONTENTS

**Page**

Table of Authorities ...........................................................................iii

Glossary .......................................................................................... v

Statement of Jurisdiction...................................................................1

Statement of the Issue .......................................................................2

Pertinent Statutes and Regulations ...................................................2

Statement of the Case .......................................................................2

    A.    Rimi's Habeas Proceedings...............................................3

    B.    Rimi's Independent Action. ............................................8

Summary of Argument ....................................................................11

Standard of Review.........................................................................14

Argument .......................................................................................15

    I.    The District Court Properly Dismissed Rimi's Habeas
        Action As Moot Because He Is Not In Custody And He Has
        Failed To Demonstrate Any Collateral Consequences
        Stemming From His Prior Detention. ...........................................15

        A.    Rimi's Habeas Action Is Moot Because He Is Not In
               Custody.....................................................................15

        B.    Rimi Has Identified No Collateral Consequences That
               Prevent Mootness.....................................................17

1.      Rimi's Former Detention by the Libyan
        Government ................................................................18

2.      Rimi's Criminal Convictions in Libya ......................19

3.      Rimi's Speculation that the United States Could
        Recapture Him ...........................................................27

        a.      The Purported Department of Defense
                Document ...........................................................29

        b.      The Purported State Department
                Documents..........................................................31

II.    The Mootness Exceptions For "Voluntary Cessation" And
       "Cases Capable Of Repetition" Do Not Apply...........................34

Conclusion.........................................................................................39

Certificate of Compliance with Federal Rule of Appellate Procedure
       32(a)

Certificate of Service

# TABLE OF AUTHORITIES

**Page**

**Cases:**

*Al-Joudi* v. *Bush*, 2008 WL 821884 (D.D.C. Mar. 26, 2008)................................23

*American Jewish Congress* v. *Vance*, 575 F.2d 939 (D.C. Cir. 1978) ..................22

*Appling* v. *State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769 (9th Cir. 2003) ...........14

*Arizonans for Official English* v. *Arizona*, 520 U.S. 43 (1997) .............................15

*Cardenas* v. *Smith*, 733 F.2d 909 (D.C. Cir. 1984) ...............................................22

*Greater Tampa Chamber of Commerce* v. *Goldschmidt*, 627 F.2d 258
  (D.C. Cir. 1980) ...................................................................................................22

*Gul* v. *Obama*, 132 S. Ct. 1906 (2012) ...................................................................6

*Gul* v. *Obama*, 652 F.3d 12
  (D.C. Cir. 2011) .............................. 6, 7, 11, 14, 16, 17, 20, 22, 26, 27, 28, 34, 36

*Idema* v. *Rice*, 478 F. Supp. 2d 47 (D.D.C. 2007).................................... 21, 23, 26

*In re: Petitioners Seeking Habeas Corpus Relief In Relation to Prior Detention at
  Guantanamo Bay*, 700 F. Supp. 2d 119 (D.D.C. 2010),....................................26

*Kiyemba* v. *Obama*, 561 F.3d 509 (D.C. Cir. 2009) ....................................... 21, 37

*Maqaleh* v. *Hagel*, 738 F.3d 312 (D.C. Cir. 2013).......................................... 14, 35

*McBryde* v. *Comm. To Review Cir. Coucnil Conduct & Disability Orders of the
  Judicial Conf. of the U.S.*, 264 F.3d 52 (D.C. Cir. 2001)...................................16

* Authorities chiefly relied upon are marked with an asterisk

*Munaf* v. *Geren*, 553 U.S. 674 (2008) ....................................................22

*Preiser* v. *Newkirk*, 422 U.S. 395 (1975) .............................................15

\*Qassim* v. *Bush*, 466 F.3d 1073 (D.C. Cir. 2006) ................ 16, 17, 27, 35, 36, 37

\*Spencer* v. *Kemna*, 523 U.S. 1 (1998)............................. 11, 15, 16, 19, 20, 27, 37

*Superior Seafoods, Inc.* v. *Tyson Foods, Inc.*, 620 F.3d 873 (8th Cir. 2010) ..........14

**Statutes:**

28 U.S.C. § 1291.......................................................................1

28 U.S.C. § 2241.......................................................................1

**Rules:**

Fed. R. App. P. 4(a)(1)(B)......................................................1

_____

\* Authorities chiefly relied upon are marked with an asterisk

## GLOSSARY

Br.........................................................................Brief of Petitioners-Appellants

JA .................................................................................. Joint Appendix

LIFG...............................................................Libyan Islamic Fighting Group

SSJA ........................................................ Sealed Supplemental Joint Appendix

## STATEMENT OF JURISDICTION

Petitioner-appellant Mohammad Rimi is a former Guantanamo detainee who was transferred to the custody and control of Libya in 2006, and who has been free in Libya since August 2011. He invoked the jurisdiction of the district court over his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. JA 14. On November 23, 2009, the district court entered an opinion and order dismissing the habeas petition as moot in light of Rimi's transfer. JA 48-52; JA 4 (*see* docket entry 30). Rimi filed a timely notice of appeal on January 22, 2010. JA 4 (*see* docket entry 31); Fed. R. App. P. 4(a)(1)(B). While that appeal was pending, Rimi subsequently filed an independent action seeking reinstatement of his habeas petition, invoking the district court's ancillary jurisdiction. SSJA 3. On July 23, 2014, the district court dismissed the independent action. JA 65. Rimi filed a timely notice of appeal on September 19, 2014. JA 11 (*see* docket entry 17); Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction to review the district court's final orders of dismissal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court properly dismissed Rimi's habeas action as moot, given that he is no longer in custody and has failed to identify any collateral consequences resulting from his prior detention.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes are reproduced in an addendum to appellants' brief.

## STATEMENT OF THE CASE

Rimi, then a Guantanamo detainee, filed a petition for a writ of habeas corpus, seeking his release from United States custody.  Rimi was subsequently released from United States custody and transferred to his home country of Libya.  The district court, therefore, dismissed Rimi's habeas action as moot.  Rimi appealed.  While that appeal was pending, Rimi purportedly discovered new evidence from the "WikiLeaks" website, allegedly relevant to his habeas action.[1]  Based upon that evidence, Rimi filed an independent action in the district court, seeking to reinstate his

_____

[1] The Government neither confirms nor denies the authenticity of the "WikiLeaks" documents.

habeas action. He acknowledged that he had been free from custody in Libya since August 2011, but insisted that the prospect of recapture by the United States warranted continuation of his habeas action. The district court dismissed his independent action, and Rimi appealed. His two appeals have been consolidated.

## A.   RIMI'S HABEAS PROCEEDINGS.

Rimi was formerly detained at the United States Naval Base in Guantanamo Bay, Cuba. In December of 2005, a petition for writ of habeas corpus was filed on Rimi's behalf by Omar Deghayes, a then-fellow Guantanamo detainee purporting to act as Rimi's next friend.[2] JA 13-47. On December 20, 2006, appellees ("the Government") notified the district court that the United States had relinquished custody of Rimi and transferred him to his home country of Libya. JA 66-67.

In the wake of Rimi's transfer, the Government moved to dismiss his habeas case as moot. JA 108-24. In support of its motion to dismiss, the

---

[2] For that reason, Omar Deghayes, as Rimi's next friend, is nominally a petitioner-appellant as well. For simplicity, however, the Government's brief will refer exclusively to appellant Rimi, since only his alleged interests are at stake.

Government submitted, *inter alia*, a declaration from Sandra L. Hodgkinson, then Deputy Assistant Secretary of Defense for Detainee Affairs in the Department of Defense.  JA 111-14.  Ms. Hodgkinson explained that when a detainee is transferred to the control of another government, it is done only after a "dialogue with the receiving government."  JA 112.  "Unless a transfer is to be a transfer for release, a purpose of the dialogue is to ascertain or establish what measures the receiving government intends to take pursuant to its own domestic laws and independent determinations that will ensure that the detainee will not pose a continuing threat to the United States and its allies."  JA 112-13.

Ms. Hodgkinson further explained that, "[i]n all cases of transfer, the detainee is transferred entirely to the custody and control of the other government, and once transferred, is no longer in the custody and control of the United States; the individual is detained, if at all, by the foreign government pursuant to its own laws and not on behalf of the United States."  JA 113.  She further noted that, "[w]hen detainees are transferred to the custody or control of their home governments, it is frequently the

4

case that the home government takes the detainee into its custody, at least for an initial period." *Id.* If a detainee "remain[s] in confinement or subject to other restrictions in [his] home countr[y]," it is "based on the determinations and laws of the home government." *Id.*

The district court dismissed Rimi's habeas action as moot on November 23, 2009. JA 48-52. The court noted that Rimi had been transferred to Libya and was being detained by the Libyan government. JA 49-50. Relying on the Hodgkinson declaration, the court rejected Rimi's argument that his continued detention in Libya amounted to constructive custody by the United States, reasoning that "any detention by a foreign government after a detainee's release is 'pursuant to [the foreign government's] own laws and not on behalf of the United States.'" JA 50 (quoting Hodgkinson declaration ¶ 5). The court also rejected Rimi's argument that his continued detention by the Libyan government was a collateral consequence of his detention by the United States such that he could pursue his habeas action. JA 49, 50. The court explained that his

detention in Libya is not attributable to the United States Government, nor would it be redressable by the court.  JA 50.

Rimi appealed the dismissal of his habeas action.  This Court held his appeal in abeyance pending disposition of a related appeal, which concerned whether habeas cases of other detainees who had been transferred from Guantanamo should be dismissed as moot.  *See Rimi* v. *Obama*, D.C. Cir. No. 10-5021, Order of July 27, 2010.  On July 22, 2011, this Court resolved that related appeal, concluding that the habeas petitions of former Guantanamo detainees were moot.  *See Gul* v. *Obama*, 652 F.3d 12 (D.C. Cir. 2011).[3]  The Court explained that once a Guantanamo detainee was released, there was no basis for merely presuming the existence of collateral consequences that would prevent the detainee's case from becoming moot.  *Id.* at 17.  Accordingly, the Court held that, assuming the collateral consequences doctrine applies, a former detainee must "make an

---

[3] This Court subsequently denied en banc review, and the Supreme Court denied a petition for certiorari.  *See Gul* v. *Obama*, 132 S. Ct. 1906 (2012).

actual showing his prior detention or continued designation [as an enemy combatant] burdens him with 'concrete injuries.'"  *Id.*

The Government subsequently moved for summary affirmance of the dismissal of Rimi's habeas case, arguing that Rimi's case was controlled by *Gul* and therefore moot.  This Court denied the motion and scheduled the case for briefing.

While his appeal was pending, on October 12, 2012, Rimi moved this Court for leave to file a motion to remand to supplement the record.  Rimi sought to supplement the record with purported newly-discovered evidence that he claimed surfaced in 2012 through the "WikiLeaks" website.  He further asked that his appeal be remanded so that the district court could re-examine its dismissal of his habeas action.

By the time his motion was filed, Rimi was no longer in custody in Libya.  In August 2011, he was released from Libyan prison "when revolutionaries stormed [the] facility."  SSJA 7.

This Court denied Rimi's motion for a remand, but noted that the denial was without prejudice to Rimi moving to supplement the record in

7

the district court pursuant to Federal Rule of Civil Procedure 60(b). *See*
*Rimi* v. *Obama*, D.C. Cir. No. 10-5021, Order of Jan. 30, 2013. Rimi sought
reconsideration from this Court, arguing that it would be futile for him to
file a Rule 60(b) motion because such a motion would be out of time. *See*
Fed. R. Civ. P. 60(c) (imposing one year limitation on Rule 60 motions
brought on the basis of newly-discovered evidence). This Court once again
denied the remand request and noted that it was "without prejudice to
[Petitioner's] ability to present his evidence to the district court in the first
instance." *See Rimi* v. *Obama*, D.C. Cir. No. 10-5021, Order of Apr. 16, 2013.
This Court granted Rimi's alternative request to hold his appeal in
abeyance. *Id.*

## B.    RIMI'S INDEPENDENT ACTION.

On June 17, 2013, Rimi filed an action seeking to reinstate his petition
for habeas corpus. *See* SSJA 1-39. That action asked the district court to
vacate the dismissal of his habeas petition based on the newly-discovered
WikiLeaks evidence, which Rimi argued would have altered the district
court's conclusion that his habeas petition was moot. SSJA 9. Specifically,

8

Rimi relied on three documents:  a purported March 2006 Department of Defense "Detainee Assessment," which includes an alleged recommendation concerning his transfer; and two purported State Department cables, from December 2007 and February 2009, documenting alleged visits to Rimi by U.S. Government personnel during his detention in Libya and which reference a purported memorandum of understanding between the United States and Libya regarding Rimi's detention.[4]  SSJA 7. Rimi argued that these documents show that he "was in the constructive custody of the United States while he was incarcerated in Libya."  *Id.*  Rimi conceded, however, that he is no longer in Libyan custody.  *Id.* (stating that he was released from Libyan prison in August of 2011 "when revolutionaries stormed [the] facility").

On July 23, 2014, the district court concluded that Rimi's habeas case remains moot and dismissed his independent action for failure to state a claim.  JA 53-64.  The district court rejected Rimi's argument that he was in

---

[4] The Government neither confirms nor denies the authenticity of these three documents.

the "constructive custody" of the United States while he was incarcerated in Libya as a basis to revisit the dismissal of his habeas action. As the district court explained, "[i]t is undisputed that Rimi *is no longer in Libyan custody* . . . and therefore it is irrelevant – for purposes of analyzing mootness – whether or not Rimi was, *in the past*, in the U.S.'s constructive custody in Libya." JA 62.

The district court likewise concluded that Rimi failed to show that his alleged injury – his criminal conviction in Libya (and the risk that he might be subject to arrest by the Libyan government to serve the remainder of his sentence) – was either traceable to the United States Government or redressable by the district court. As the district court explained, the "Libyan government's decision to try and convict Rimi is no more traceable to the U.S. than its prior decision to detain him," JA 63, and, in any event, reinstatement of his habeas petition "would not somehow undo his Libyan criminal conviction," JA 64. The court concluded, therefore, that even if the

collateral consequences doctrine applies,[5] Rimi failed to demonstrate any injury resulting from his former U.S. detention and his habeas action remains moot.  JA 63-64.

## SUMMARY OF ARGUMENT

Petitioner Mohammad Rimi is a former Guantanamo detainee who has been transferred to his home country of Libya, where he is no longer in custody.  Pursuant to this Court's decision in *Gul* v. *Obama*, 652 F.3d 12 (D.C. Cir. 2011), Rimi's habeas action is moot, unless he can demonstrate collateral consequences (*i.e.*, a concrete and ongoing injury) traceable to his former detention at Guantanamo and redressable by this Court.  None of Rimi's alleged injuries satisfies this burden.

Rimi alleges that after his transfer from Guantanamo to Libya, he was imprisoned by the Libyan government until revolutionaries stormed the

---

[5] The collateral consequences doctrine arose in the context of statutory habeas review of domestic criminal convictions and provides that release from custody generally moots a habeas petition unless a petitioner continues to suffer "some concrete and continuing injury other than the now-ended incarceration."  *Spencer* v. *Kemna*, 523 U.S. 1, 7 (1998).

prison and released him. His prior detention in Libya, however, is not an ongoing injury sufficient to warrant a finding of collateral consequences.

Rimi further alleges that Libya criminally prosecuted and convicted him based on his detention at Guantanamo and his designation as an enemy combatant, and that he is subject to arrest to serve the remainder of his sentence. But such a risk of arrest is entirely speculative. In any event, such an injury would not be redressable by this Court because it is dependent upon the independent actions of a foreign sovereign. Nor has Rimi offered any evidence to demonstrate that his Libyan conviction was somehow traceable to the United States, because it was based on his status as an enemy combatant or as a Guantanamo detainee, as opposed to his underlying conduct.

Finally, Rimi alleges that when he was transferred to Libya he remained in the constructive custody of the United States. As a result, he contends that because the United States did not sanction his release from the Libyan prison, he is subject to recapture by the United States. The Government's Hodgkinson declaration in this case, however, explains that

12

in all cases of transfer, a Guantanamo detainee is transferred to the exclusive custody and control of the receiving foreign government. That declaration, which this Court has previously credited, refutes Rimi's constructive custody argument.

Rimi attempts to undermine that declaration with purported Department of Defense and State Department documents, allegedly found on the WikiLeaks website. Those documents, even if assumed authentic for purposes of argument, are not inconsistent with the Government's declaration. The purported Defense Department document merely contains a recommendation from one component of the Department of Defense to another component about a recommended transfer of a detainee. The purported State Department documents reference a memorandum of understanding between the Government and Libya, allegedly regarding Rimi's transfer, and purportedly document visits by United States personnel to Rimi while detained in Libya. But none of these documents, even if authentic, establish that the United States had custody or exercised control over Rimi once he was transferred to Libya. Indeed,

the Government's Williamson declaration explains that agreements between the Government and a receiving country are unremarkable in cases of transfer because the United States may seek to obtain certain assurances from the receiving country regarding the detainee's treatment, which may include an assurance of access to the detainee by the Government to monitor the detainee's condition or treatment.

For those reasons the district court properly dismissed Rimi's habeas action as moot and dismissed his independent action seeking to reinstate the habeas action.  This Court should affirm those judgments.

## STANDARD OF REVIEW

This Court reviews *de novo* the dismissal of a habeas petition on grounds of mootness.  *Maqaleh* v. *Hagel*, 738 F.3d 312, 320 (D.C. Cir. 2013); *Gul* v. *Obama*, 652 F.3d 12, 15 (D.C. Cir. 2011).  This Court reviews dismissal of an independent action for relief from a prior judgment for an abuse of discretion.  *See, e.g., Superior Seafoods, Inc.* v. *Tyson Foods, Inc.*, 620 F.3d 873, 878-79 (8th Cir. 2010); *Appling* v. *State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003).

14

## ARGUMENT

I. **THE DISTRICT COURT PROPERLY DISMISSED RIMI'S HABEAS ACTION AS MOOT BECAUSE HE IS NOT IN CUSTODY AND HE HAS FAILED TO DEMONSTRATE ANY COLLATERAL CONSEQUENCES STEMMING FROM HIS PRIOR DETENTION.**

### A.     Rimi's Habeas Action Is Moot Because He Is Not In Custody.

Article III of the Constitution limits the subject-matter jurisdiction of the federal courts to adjudication of actual ongoing controversies between litigants. *See Preiser* v. *Newkirk*, 422 U.S. 395, 401 (1975). This requirement applies at "all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English* v. *Arizona*, 520 U.S. 43, 67 (1997) (citation and internal quotation marks omitted). "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer* v. *Kemna*, 523 U.S. 1, 7 (1998) (citation and internal quotation marks omitted).

An incarcerated convict's habeas petition challenging his conviction "always satisfies" this requirement because his incarceration is a concrete injury, "caused by the conviction and redressable by invalidation of the

15

conviction." *Spencer*, 523 U.S. at 7. Once the petitioner is released, however, he must identify a "collateral consequence" – a "concrete and continuing injury" – to prevent the mootness of his habeas petition. *Id.; see also Qassim* v. *Bush*, 466 F.3d 1073, 1076 (D.C. Cir. 2006) (once petitioner is released from custody, he must show "concrete and continuing injury other than the now-ended incarceration"); *McBryde* v. *Comm. To Review Cir. Coucnil Conduct & Disability Orders of the Judicial Conf. of the U.S.*, 264 F.3d 52, 57 (D.C. Cir. 2001) (injury must be the "'tangible, concrete effect'" of detention and must be "susceptible to judicial correction").

In *Gul* v. *Obama*, 652 F.3d 12 (D.C. Cir. 2011), this Court applied these principles to the context of habeas actions brought by former Guantanamo detainees. The Court assumed, without deciding, that the collateral consequences doctrine applies to habeas actions brought by former Guantanamo detainees,[6] and held that such actions were moot, unless a former detainee could "make an actual showing [that] his prior detention

---

[6] The Government remains of the view, as it argued in *Gul*, that the collateral consequences doctrine does not apply to habeas petitions filed by former Guantanamo detainees.

or continued designation [as an enemy combatant] burdens him with 'concrete injuries.'"  *Gul*, 652 F.3d at 17.  In so doing, this Court rejected the detainees' argument that collateral consequences could be presumed merely from the fact of their prior detention or designation as enemy combatants.  *Gul*, 652 F.3d at 17.

*Gul* controls here.  Just like the former Guantanamo detainees in *Gul*, Rimi concedes that he is no longer in custody.  SSJA 7.  Assuming, as this Court did in *Gul*, that the collateral consequences doctrine applies, Rimi's habeas action is therefore moot, unless he can demonstrate a "concrete and continuing injury" that is traceable to his prior detention at Guantanamo and redressable by this Court.  *Gul*, 652 F.3d at 17; *Qassim*, 466 F.3d at 1076. For the reasons explained below, he cannot.

## B.    Rimi Has Identified No Collateral Consequences That Prevent Mootness.

Rimi alleges three collateral consequences of his prior detention at Guantanamo.  First, he argues Libya detained him on behalf of the United States.  Br. at 18-20 (contending that he remained in the "constructive custody" of the United States after being transferred to Libya).  Second,

Rimi contends that he is subject to arrest or further incarceration because of his criminal convictions in Libya, which were allegedly "informed by" the United States' military tribunal charges. Br. at 22-23. Third, he argues that the United States could recapture him because he has never officially been released from custody. Br. at 24-26. None of these allegations, however, identify an ongoing, concrete injury that is both traceable to Rimi's Guantanamo detention and redressable by this Court.

### 1. *Rimi's Former Detention by the Libyan Government*

Rimi contends that he was detained by the Libyan government at the behest of the United States and therefore remained in the constructive custody of the United States while imprisoned in Libya. Br. at 19. He argues, therefore, that *Gul* is not controlling because, unlike the petitioners in that case who were released upon transfer, Rimi remained in custody after his transfer from Guantanamo. *Id.* at 19-21.

Rimi's argument is fundamentally flawed. Rimi readily admits that he is no longer in custody in Libya. SSJA at 7; Br. at 17 ("[Rimi] is not presently in the physical custody of either the Government or Libya.").

Accordingly, he cannot rely on his *former* detention (either in Guantanamo or in Libya) as an ongoing, concrete injury.  As the district court correctly concluded, Rimi's argument that he was in the "constructive custody" of the United States while he was detained in Libya, is entirely beside the point, now that Rimi is free.  JA 62 ("It is undisputed that Rimi *is no longer in Libyan custody* . . . and therefore it is irrelevant – for purposes of analyzing mootness – whether or not Rimi was, *in the past*, in the U.S.'s constructive custody in Libya.").  His circumstances now are not materially different than the detainees in *Gul*.  Rimi's now-ended detention, therefore, cannot constitute a collateral consequence.  *Spencer*, 523 U.S. at 7.

### 2.    *Rimi's Criminal Convictions in Libya*

Rimi argues that his criminal prosecution and conviction in Libya are a result of his Guantanamo detention and designation as an "enemy combatant," and that he may be subject to arrest in Libya since he has not fully served his sentence.  Br. at 22-23.  This Court can dismiss that injury as speculative, non-redressable, or not traceable to the United States.

19

Rimi's argument that the current Libyan government, years after his release by revolutionaries who stormed the prison, might now seek to arrest him to complete the remainder of his sentence is entirely speculative. Such speculation about the possibility of detention is not sufficient to establish a "concrete and continuing injury" for purposes of habeas relief. *Cf. Spencer* v. *Kemna*, 523 U.S. 1, 7, 14 (1998) (holding that habeas challenge to parole revocation was moot where petitioner completed term of imprisonment and only alleged injury was that parole revocation could be used against him in future judicial proceeding; such an injury is "a possibility rather than a certainty or even a probability"); *Gul*, 652 F.3d at 20 (claim that former Guantanamo detainees might be recaptured by United States was "speculative").

In any event, Rimi also fails to identify what action this Court could take to redress his Libyan criminal convictions and the possibility of his future arrest, a prospect which is entirely dependent upon the actions of a foreign sovereign.  *Gul*, 652 F.3d at 18 ("[A]ny travel restrictions imposed upon Gul and Hamad are traceable to the act of a foreign sovereign, and

. . . any decision to lift those restrictions will depend upon an exercise of broad and legitimate discretion a court cannot presume either to control or predict.") (citation and internal quotation marks omitted).    While "[e]quitable remedies that courts can provide in habeas cases" can involve "'an order freeing a petitioner from penalties resulting from a conviction that persist beyond the end of detention,'" *Idema* v. *Rice*, 478 F. Supp. 2d 47, 52 (D.D.C. 2007), this Court would not be able to remedy Rimi's alleged injury of potential detention in Libya even if he were given a full opportunity to litigate his habeas petition.  "It is a longstanding principle of our jurisprudence that '[t]he jurisdiction of a nation, within its own territory, is necessarily exclusive and absolute.'"  *Kiyemba* v. *Obama*, 561 F.3d 509, 515 (D.C. Cir. 2009) (citation omitted).  "Judicial inquiry into a recipient country's basis or procedures for prosecuting or detaining a transferee from Guantanamo would implicate not only the norms of international comity, but also . . . separation of powers principles[.]"  *Id.* at 515.  The Supreme Court has made clear that habeas is an equitable remedy and does not extend to "interfering with a sovereign's recognized

21

prerogative to apply its criminal law to those alleged to have committed crimes within its borders." *Munaf* v. *Geren*, 553 U.S. 674, 700 (2008); *id.* at 698-99 ("[T]he same principles of comity and respect for foreign sovereigns that preclude judicial scrutiny of foreign convictions necessarily render invalid attempts to shield citizens from foreign prosecutions.").

This Court has consistently held that injuries caused by the independent actions of a foreign government are not redressable by a United States court. *See, e.g., Cardenas* v. *Smith*, 733 F.2d 909, 914 (D.C. Cir. 1984); *Greater Tampa Chamber of Commerce* v. *Goldschmidt*, 627 F.2d 258, 263 (D.C. Cir. 1980); *American Jewish Congress* v. *Vance*, 575 F.2d 939, 946 (D.C. Cir. 1978). In *Gul*, this Court assumed the truth of the allegations presented by the former detainees regarding restrictions imposed by foreign governments, but went on to hold that such harms were "caused not by a party before the court but by a stranger to the case, and [are] therefore beyond the power of the court to redress." *Gul*, 652 F.3d at 18.

The same conclusion is warranted here. Any potential law enforcement action in Libya is based on independent, sovereign judgments

22

of foreign officials that this Court cannot remedy.  *Idema*, 478 F. Supp. 2d at

52 ("This Court has no power to overturn the [foreign] conviction, declare

it void or in any way affect the discretionary decisions of prospective

employers or family court judges."); *Al-Joudi* v. *Bush*, No. 05-cv-0301, 2008

WL 821884, at *1 (D.D.C. Mar. 26, 2008) (Kessler, J.) (former Guantanamo

detainees' habeas petitions moot despite allegations of future prosecution

because the alleged collateral consequences were "totally dependent upon

the actions of a non-party sovereign authority beyond the control of this

Court" and "would not give rise to an injury that is redressable in this

habeas action against Respondents").[7]

    In addition to being speculative and non-redressable, Rimi's alleged

injury – his criminal prosecution and conviction – is not traceable to the

United States' actions.  Rimi offers no evidence to show that his criminal

prosecution and conviction in Libya were premised on the fact of his prior

---

[7] Rimi suggests that the court could remove his enemy combatant designation, Br. at 26, but such an action would not redress his alleged injury.  For the reasons explained above, there is no evidence that his prosecution and conviction in Libya were based on his designation as an enemy combatant, as opposed to Rimi's underlying conduct.

Guantanamo detention or designation as an enemy combatant, rather than an appropriate exercise of Libya's sovereign authority to enforce its own laws.  As the district court correctly noted, the "Libyan government's decision to try and convict Rimi is no more traceable to the U.S. than its prior decision to detain him."  JA 63.

Rimi argues that the alleged State Department documents he obtained from WikiLeaks provide a basis for the Court to conclude that his convictions of terrorism-related crimes in Libya "were informed by the allegations levied" against him during his Guantanamo detention.  Br. at 16; *id.* at 22-23.  Appellees neither confirm nor deny that the purported State Department documents attached to Rimi's independent action are authentic United States Government documents.  Even assuming their authenticity for purposes of determining mootness, however, the documents do nothing more than provide a description of the apparent factual basis of Rimi's criminal conviction in Libya; that is, they purport to summarize what transpired in the Libyan proceeding.  There is no evidence in the documents that the Libyan proceedings were informed by,

24

or otherwise dependent upon, Rimi's designation by the United States as an enemy combatant or the legality of Rimi's prior detention by the United States.

Rimi attempts to manufacture a causal connection between his prior detention at Guantanamo and his criminal conviction in Libya by arguing that two of the criminal charges summarized in the purported State Department documents – Rimi's membership in Al-Qaida and the Libyan Islamic Fighting Group (LIFG) – are "congruent" with allegations about him made during his detention at Guantanamo.  Br. at 22.  But, again assuming their authenticity, at most these documents merely establish that Rimi's detention at Guantanamo and his Libyan criminal conviction were based on the same underlying conduct, that is, on Rimi's membership in Al-Qaida and LIFG.  It is unremarkable that membership in Al-Qaida and LIFG would form the basis for law of war detention by the United States and separate criminal liability under Libyan law.

There is no basis to conclude, however, that the Libyan criminal conviction was somehow dependent on Rimi's designation by the United

25

States as an enemy combatant, much less that a decision by this Court on Rimi's habeas petition would have a direct impact on the outcome of the Libyan criminal proceeding, by operation of law or otherwise.  *Idema*, 478 F. Supp. 2d at 52 (distinguishing between statutory consequences "imposed on former detainees by operation of law" that are redressable and "non-statutory consequences" dependent on decision by independent actors that are not redressable).   Rimi thus ignores the important distinction between "the underlying conduct for which [he was] previously detained at Guantanamo, as opposed [to his] designation as an enemy combatant."  *In re: Petitioners Seeking Habeas Corpus Relief In Relation to Prior Detention at Guantanamo Bay*, 700 F. Supp. 2d 119, 134 (D.D.C. 2010), *aff'd sub nom., Gul*, 652 F.3d at 20.  Any alleged injuries that flow from Rimi's conduct, particularly any injuries imposed by a foreign sovereign, will not be removed by an order declaring his prior detention by the United States unlawful.  *Id.*

### 3.    *Rimi's Speculation that the United States Could Recapture Him*

Rimi points to the possibility that the United States could decide to recapture him, allegedly because the United States has "never relinquished custody," as another injury that satisfies the collateral consequences doctrine.  Br. at 24.  He suggests that because he remained in the "constructive custody" of the United States even after he was transferred to Libya, and because he was not officially released from custody in Libya, the United States may decide to recapture and detain him.

Such an argument is sheer speculation, unsupported by any evidence.  Indeed, *Gul* rejected the argument that the United States "may recapture [and] again detain" former Guantanamo Bay detainees as "the most speculative of all."  *Gul*, 652 F.3d at 20; *see also Qassim*, 466 F.3d at 1076-77 (discerning "no reasonable expectation" that Guantanamo detainees would be detained again once released to Albania).  And such speculation is insufficient to establish an ongoing, concrete injury.  *Spencer* v. *Kemna*, 523 U.S. at 7, 14; *Qassim*, 466 F.3d at 1076-77 (former Guantanamo detainees failed to identify any concrete and continuing injury).  On that

ground alone, this Court may dismiss Rimi's alleged injury as insufficient to establish jurisdiction over his habeas action.

In any event, Rimi's "constructive custody" argument lacks merit. As the Government previously explained in the Hodgkinson declaration, which this Court has credited, once a Guantanamo detainee is transferred from Guantanamo, he is no longer in the custody and control of the United States. *See* JA 113 ("In all cases of transfer, the detainee is transferred entirely to the custody and control of the other government, and once transferred, is no longer in the custody and control of the United States . . . ."). In *Gul*, this Court explicitly rejected a constructive custody argument, relying on the Hodgkinson declaration. 652 F.3d at 18 n.\*.

Rimi argues that the purported State and Defense Department documents that his counsel allegedly obtained from WikiLeaks undermine the Government's declarations and establish that Rimi remained in constructive custody of the United States while detained in Libya. He surmises, therefore, that since the United States has never officially released him, the United States might decide to recapture him. The

documents, however, even if authentic (which the Government does not concede), are not inconsistent with the declarations filed by the Government in this case.

### a.    The Purported Department of Defense Document

In support of his constructive custody allegation, Rimi cites to a purported Department of Defense document dated 2006 in which Joint Task Force-Guantanamo "recommends" to its superior command, the United States Southern Command, that "if a satisfactory agreement can be reached that ensures continued detention and allows access to detainee and/or to exploited intelligence, detainee can be Transferred Out of DoD Control (TRO)."  Br. at 10, 18-19; SSJA 22-31.  Taken at face value, this document merely contains an alleged recommendation by one component of the Department of Defense to another component about the proposed disposition of a detainee.  The document does not purport to represent a binding agreement, or even a diplomatic arrangement regarding the terms of Rimi's transfer to Libya, nor does it, in any way establish the veracity of

his claim that he was previously detained in Libya at the behest of the United States.

Indeed, Rimi has provided no documentation that would establish his transfer was inconsistent with the Hodgkinson Declaration, which this Court in *Gul* relied upon to support dismissal of the former Guantanamo detainee habeas petitions.  The Hodgkinson Declaration makes clear that when the Department of Defense transfers detainees to the custody of other governments, it does so after the United States engages in dialogue with the receiving country "to ascertain or establish what measures the receiving government intends to take pursuant to its own domestic laws and independent determinations that will ensure the detainee will not pose a continuing threat to the United States and its allies."  *See* JA 112-13.  The declaration goes on to state:  "In all cases of transfer, the detainee is transferred entirely to the custody and control of the United States; the individual is detained, if at all, by the foreign government pursuant to its own laws and not on behalf of the United States."  JA 113.  The purported Defense Department document merely recommends that if an agreement

can be reached with another country to mitigate the threat posed by Rimi,

then he can be released from United States custody.  It could not and does

not establish the "constructive custody" arrangement Rimi is alleging.

### b.    The Purported State Department Documents

Rimi also points to purported State Department documents that refer

to a "United States Government-Government of Libya Transfer

Framework" memorandum of understanding allegedly pertaining to

Rimi's transfer.  Br. at 11, 19; SSJA 33-39.  The documents also discuss

purported visits by United States personnel to Rimi in Abu Salim prison

during his custody by Libyan officials.  Br. at 11, 19; SSJA 33-39.  According

to Rimi, these alleged visits support his allegation that he remained under

the control of the United States during his detention in Libya.  Br. at 16, 19.

The documents Rimi cites, even if accepted as true, do not support

Rimi's interpretation that the United States and Libya agreed that Libya

would merely exercise physical custody over Rimi, subject to the United

States' control.  For example, it would be unremarkable that the United

States memorialized in writing its arrangements with Libya regarding

31

Rimi's transfer.  The existence of such an agreement would hardly be evidence that the United States exercised control over Rimi once he was transferred to Libya.

Furthermore, the alleged State Department visits to Rimi during his custody in Libya would not establish that the United States maintained constructive custody of him.  The Williamson declaration makes clear that a priority when transferring detainees is securing assurances from the receiving country that the detainee will be treated humanely.  JA 118. "This policy is consistent with the approach taken by the United States in implementing the Convention Against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment and the Protocol Relating to the Status of Refugees." *Id.*  "Among the assurances sought in every transfer case in which continued detention or other security measures by the government concerned are foreseen is the assurance of humane treatment and treatment in accordance with the international obligations of the foreign government accepting transfer."  JA 119.  In appropriate cases, the Department of State "may also consider seeking the foreign government's

32

assurance of access [to the detainee] by governmental or non-governmental entities in the country concerned to monitor the condition of an individual returned to that country, or *of U.S. Government access* to the individual for such purposes." JA 121 (emphasis added).

Given its long-standing policy against transfers to countries where it is more likely than not that the person would be tortured, the United States routinely requested and obtained measures regarding the humane treatment of transferred detainees by receiving states. Accordingly, it would be neither surprising nor unusual that the Department of State might seek to monitor humane treatment subsequent to transfer through in-person visits to Rimi in Abu Salim prison. As explained in the Williamson declaration, such visits, if they occurred, would enable the Department of State to "pursue any credible report and take appropriate action if it had reason to believe those assurances would not be, or had not been, honored." JA 121.

To the extent the United States is granted access to individuals who have been transferred to the custody of foreign governments, that does not

33

mean that the United States has control over those individuals, much less over the foreign authorities who may be detaining them. As stated unequivocally in the Hodgkinson declaration, "[i]n all cases of transfer, the detainee is transferred entirely to the custody and control of the other government . . . ." JA 113. Indeed, this Court has held that such "transfer agreements, which require the receiving Government to monitor the former detainees," do not "contradict the fact that once they are transferred the detainees are no longer in the custody of the United States." *Gul*, 652 F.3d at 18 n.*.

## II.    THE MOOTNESS EXCEPTIONS FOR "VOLUNTARY CESSATION" AND "CASES CAPABLE OF REPETITION" DO NOT APPLY.

Rimi argues that, regardless of collateral consequences, his appeal is not moot because of two exceptions to the mootness doctrine. First, Rimi argues that the Government's voluntary cessation of allegedly unlawful activity (in the form of Rimi's release from purportedly unlawful U.S. detention) does not moot his appeal. Second, Rimi contends that because he could be recaptured again by the United States (or Libya, at the behest of the United States), but released before the issue could be fully litigated,

his appeal is subject to the "capable of repetition, but evading review" exception to the mootness doctrine. Neither exception applies. Rimi, therefore, has failed to meet his burden to demonstrate that his case is not moot. *Maqaleh* v. *Hagel*, 738 F.3d 312, 323 n.5 (D.C. Cir. 2013) (former Guantanamo detainee "bears the burden of adducing facts sufficient to show that his case is not moot").

Voluntary cessation of unlawful activity is usually an exception to the mootness doctrine in order to prevent a defendant from "subjecting the plaintiff to the same harm but, at the same time, avoiding judicial review." *Qassim* v. *Bush*, 466 F.3d 1073, 1075 (D.C. Cir. 2006) (per curiam). "Accordingly, a case can be mooted by virtue of the defendant's cessation of its allegedly illegal conduct only if (1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (citation and internal quotation marks omitted).

The voluntary cessation exception to the mootness doctrine does not apply here because there is no reasonable expectation that the United States

will recapture and detain Rimi. *Qassim*, 466 F.3d at 1076 (because Guantanamo detainees were released to Albania, there was no reasonable expectation they would be detained again); *cf. Gul*, 652 F.3d at 20 (former Guantanamo detainees' claim that they might be recaptured by the United States was "speculative"). In addition, the fact that Rimi is no longer in custody in his home country of Libya shows that any effects of the Government's allegedly unlawful detention "have [been] completely and irrevocably eradicated."[8] *Qassim*, 466 F.3d at 1076; *cf. Gul*, 652 F.3d at 20-21 (even assuming "reputational harm" from prior detention, habeas case was moot upon detainees' release).

Rimi suggests there is an expectation that he will be recaptured because he was never officially released from custody. Br. at 28. As explained above, that risk is speculative; he has presented no evidence that either the United States or Libya seeks to detain him again. And, even if Libya did seek to recapture Rimi to serve the remainder of his sentence –

---

[8] The Government disputes Rimi's suggestion that his detention at Guantanamo was unlawful.

which is also speculative – there is no action this Court could take to redress such an alleged injury. *See Kiyemba*, 561 F.3d at 515 ("*Munaf* [v. *Geren*, 553 U.S. 674 (2008),] therefore bars a court from issuing a writ of habeas corpus to shield a detainee from prosecution and detention by another sovereign according to its laws.").

The second mootness exception Rimi relies upon is for cases "capable of repetition, yet evading review." That exception "applies only in exceptional situations," where (1) the challenged action is too short in duration to be fully litigated prior to its completion or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Spencer* v. *Kemna*, 523 U.S. 1, 17 (1998). Rimi cannot satisfy either of these conditions. He has shown no likelihood that he is likely to be detained by the United States again, *see Qassim*, 466 F.3d at 1076 (no expectation that Guantanamo detainees would be detained again once they were transferred to third country), or that the duration of such detention would necessarily be so short so as to evade review, *see Spencer*, 523 U.S. at 18 (petitioner could not demonstrate "that the time

between parole revocation and expiration of sentence is always so short as to evade review").

Rimi argues that his prior detention was too short to be fully litigated before he was transferred to Libya, and that the Government has routinely transferred detainees before their habeas cases could be litigated. Br. at 29. But Rimi has made no showing that such transfers have been for the purpose of evading habeas review. Rather, as the Hodgkinson declaration explains, the Government "has no interest in detaining enemy combatants longer than necessary." JA 112. "Where continued detention is deemed no longer necessary, a detainee may be transferred to the control of another government . . . ." JA 112.

## CONCLUSION

For the forgoing reasons, this Court should affirm the judgments below.

Respectfully submitted,

BENJAMIN C. MIZER
  *Acting Assistant Attorney General*

RONALD C. MACHEN JR.
  *United States Attorney*

MATTHEW M. COLLETTE
CATHERINE H. DORSEY
  *(202) 514-3469*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7236*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C. 20530-0001*

MARCH 2015

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

I hereby certify that that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Palatino Linotype, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,908 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.


           s/Catherine H. Dorsey
           CATHERINE H. DORSEY

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2015, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. I further certify that I will cause eight paper copies of this brief to be filed with the Court within two business days.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

    s/Catherine H. Dorsey
CATHERINE H. DORSEY